UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL CUSPERT,

                           Plaintiff,

        -v-

ACTING COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

CIVIL ACTION NO.: 20 Civ. 10583 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.      INTRODUCTION

Plaintiff Samuel Cuspert ("Mr. Cuspert"), commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI") under the Act.  (ECF No. 1 ¶¶ 1, 7–8).  The parties consented to Magistrate Judge jurisdiction for all purposes, (ECF No. 12), and cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF Nos. 28 ("Mr. Cuspert's Motion"); 32 (the "Commissioner's Motion")).  For the reasons set forth below, Mr. Cuspert's Motion is GRANTED and the Commissioner's Motion is DENIED.

## II.      BACKGROUND

### A.  Historical Background

Mr. Cuspert was born in 1972 and was 46 on the alleged onset date, October 15, 2018, the date on which he was released from a 17-year prison term.  (Administrative Record (ECF

Nos. 17; 17-1) ("R.") 8, 11, 160, 184, 276).  He completed nine years of special education, and does not have a General Educational Development degree ("GED").  (R. 10, 181).  He was abused by his godfather when he was a child.  (R. 14).

In 1995, while incarcerated, Mr. Cuspert was hospitalized for suicidal ideation.  (R. 280).  In 2001, "while psychiatrically incarcerated," he attempted suicide.  (R. 280; see R. 211).  From 2001 through 2017, he received psychiatric treatment.  (R. 280).  In 2000 and 2014, he suffered beatings that injured his shoulder.  (R. 11).

In a Discharge Summary on his release from prison on October 15, 2018, G. Thamiraja, M.D. ("Dr. Thamiraja"), noted a diagnosis of persistent depressive disorder and antisocial personality disorder, for which he was prescribed Remeron (30mg).[1]  (R. 274–75).  On leaving prison, Mr. Cuspert would:

> require psychiatric follow up for symptom and medication assessment and treatment as well as to address his history of situational stressors/depression and to identify sources/triggers for his mood in an effort to develop and maintain socially appropriate coping skills[.]  He would benefit from a track for skills development in areas of socialization, wellness management, to aid in continued stability maintenance.

(R. 275).  Dr. Thamiraja observed Mr. Cuspert's appearance as "clean and neat," speech and thought process as "undisturbed," mood "stable," affect "congruent," and insight and judgment "fair."  (R. 275).  Dr. Thamiraja added that he was cooperative, made good eye contact, and was oriented, and did not exhibit psychotic symptoms.  (R. 275).

---

[1] Remeron is the brand name for Mirtazapine, an antidepressant used to treat Major Depressive Disorder in adults.  See Remeron, DRUGS.COM, https://www.drugs.com/remeron.html (last visited Sept. 19, 2022); see also Mirtazapine (Remeron), NAMI, https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Mirtazapine-(Remeron) (last visited Sept. 19, 2022).

### B. Medical Evidence

Mr. Cuspert and the Commissioner have each provided summaries of the medical evidence in the Record. (See ECF Nos. 29 at 7–12; 33 at 8–14). The Court adopts the parties' summaries as accurate and complete and sets forth below the additional facts relevant to the Court's analysis. (See § IV, infra).

### C. Administrative Proceedings

On October 26, 2018, Mr. Cuspert filed an application for SSI benefits (the "Application"), alleging psychological illness. (R. 40).[2] After the SSA denied the Application initially and on reconsideration (R. 68–79, 83–94), he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 96).

### 1. The Hearing

On November 20, 2019, ALJ Angela Banks held a hearing (the "Hearing"), at which Mr. Cuspert, who was represented by counsel, appeared and testified. (R. 2–27). Todd Gendreau, an impartial vocational expert ("VE"), also appeared at the ALJ Hearing. (R. 2, 22–25).

During his testimony, Mr. Cuspert stated that he had been incarcerated for 17 years, until 2018, and considered himself homeless. (R. 8–9, 11). He completed nine years of schooling in special education. (R. 10). Since 2018, he had worked in one location for one day, and in another location for "about a week." (R. 10–11). While in prison, he was "beaten" in 2000 and 2014,

---

[2] Other evidence in the Record indicates that the Application date was November 8, 2018 (see R. 160–65, 179–94), but the discrepancy is not material to the Court's analysis.

resulting in an injury to his shoulder that prevented him from doing regular work.  (R. 11).  He

also worked as a porter in prison, cleaning the bathroom and gallery.  (R. 21).

Mr. Cuspert described his psychological problems as involving feeling depressed, difficulty

relating to people, and hearing voices, for which he took Bupronin[3] and Mirtazapine.  (R. 13–14).

Whether he could get along with people in a work setting would "depend[] on what kind of

setting it [was] that [he was] in and who's the superior."  (R. 15).  He has no memory problems,

but does not "like to be told what to do."  (R. 18).  Mr. Cuspert described attempting suicide by

drowning in 2017.  (R. 17).

The ALJ also heard testimony from the VE.  (R. 2, 22–26).  Because Mr. Cuspert had no

past relevant work, ALJ Banks posed a hypothetical (the "First Hypothetical") that assumed an

individual with no past relevant work and no exertional limitations, but with the following non-

exertional limitations:

> . . . able to perform the mental demands of work that require him to understand,
> remember and carry out instructions consistent with occupations that can be
> learned in up to 30 days.  He requires a setting that is goal-oriented versus
> requiring that he maintain a specified pace consistently throughout a workday . . .
> he can tolerate occasional contact, but never interaction with the public and he
> remains able to interact appropriately with supervisors and co-workers provided
> such contact, after the completion of the initial orientation and training period, is
> neither frequent nor prolonged.

(R. 23).  The VE testified that three occupations existed for an individual in the First Hypothetical:

(1) hand packager (Dictionary of Occupational Titles ("DOT") number 920.587-018), of which

there were 160,000 positions in the national economy; (2) industrial cleaner (DOT number

---

[3] Bupropion is used to treat depression.  <u>See</u> <u>Bupropion Hcl  – Uses, Side Effects, and More</u>, WEBMD,
<u>https://www.webmd.com/drugs/2/drug-13507-155/bupropion-hcl-oral/bupropion-oral/details</u>        (last
visited Sept. 19, 2022).

381.687-018), of which there were 320,000 positions in the national economy; and (3) marker
(DOT code 209.587-034), of which there were 170,000 positions in the national economy.  (R. 23–
24).  The ALJ then posed another hypothetical, that added to the First Hypothetical the additional
limitation that the individual "would be expected to respond to normal supervision and usual
work situations by exhibiting behavior that is inappropriate or disruptive to others in the
workplace with an average recurrent frequency of three to four times per month."  (R. 24).  The
VE responded that such behavior "would not be tolerated by employers . . . especially during
initial probationary or training period and [the individual] would eventually be terminated."
(R. 24).

### 2.    The ALJ Decision and Appeals Council review

On February 5, 2020, ALJ Banks issued a decision denying Mr. Cuspert's Application (the
"ALJ Decision").  (R. 40–51).

ALJ Banks followed the five-step disability determination process.  At step one, the ALJ
found that Mr. Cuspert had not engaged in substantial gainful activity since October 16, 2018,
the Application date.  (R. 42).  At step two, the ALJ found that Mr. Cuspert had two severe
impairments, depressive disorder and anti-social personality disorder.  (R. 42).

At step three, the ALJ found that Mr. Cuspert did not have an impairment or combination
of impairments that met or medically equaled the severity of one of the impairments listed in the
Act.  (R. 43).  (The impairments listed in 20 C.F.R. Appendix 1, Subpart P, Part 404 are known as
the "Listings").  The ALJ found that Mr. Cuspert did not meet Listings 12.04 (depressive, bipolar
and related disorders) or 12.08 (personality and impulse-control disorders), because his mental
impairments did not cause at least two "marked" limitations or one "extreme" limitation, which

is required to satisfy the "paragraph B" criteria, nor did the evidence establish the "paragraph C" criteria. (R. 43–44). Instead, the ALJ found that Mr. Cuspert had only moderate or mild limitations in the broad areas of functioning. (R. 43). The ALJ noted that, while Mr. Cuspert's intellectual functioning was "in the intellectually disabled range[,]" he had "fair insight and judgment[,]" "unimpaired memory[,]" and "aware cognition[,]" he was able to get along with family, friends, and neighbors, he could concentrate for "intermittent periods[,]" and had "a good ability for his activities of daily living[.]" (R. 43–44). Before turning to step four, the ALJ assessed that Mr. Cuspert had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but with the following non-exertional limitations:

> [He] remains able to perform the mental demands of work that require him to understand, remember and carry out instructions consistent with occupations that can be learned in up to 30 days. He requires a setting that is goal oriented versus requiring that he maintain a specific pace consistently throughout a workday. He can tolerate occasional contact, but never interaction with the public, and he remains able to interact appropriately with supervisors and coworkers provided contact after the completion of the initial orientation and training period that is neither frequent nor prolonged.

(R. 44).

At step four, ALJ Banks concluded that Mr. Cuspert had no past relevant work. (R. 49). At step five, the ALJ concluded that there were three jobs that exist in significant numbers in the national economy that Mr. Cuspert was able to perform, hand packager, industrial cleaner, and marker, i.e., the three jobs that the VE described in his testimony. (R. 50; see R. 23–24). Accordingly, the ALJ found that Mr. Cuspert was not disabled from the Application date to the date of the ALJ Decision. (R. 50–51).

On October 19, 2020, the Appeals Council denied review, making the ALJ Decision the final decision of the Commissioner. (R. 28–33).

### III.   LEGAL STANDARDS

**A.  Standard of Review**

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law.  See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008) ("Calvello I"), adopted by, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) ("Calvello II").  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Calvello I, 2008 WL 4452359, at *8.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).  The substantial evidence test applies not only

to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009).  To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. § 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."  Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  See 20 C.F.R. § 416.920b.  "If a gap exists in the administrative record[,] then the plaintiff has not been afforded a full and fair hearing and the ALJ has failed in his or her duty to develop the administrative record."  Dufresne v. Astrue, No. 12 Civ. 49 (MAD) (TWD), 2013 WL 1296376, at *5 (N.D.N.Y. Mar. 8, 2013) ("Dufresne I") (citing

Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)), adopted by, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013).  On the other hand, "[i]f all of the evidence received is consistent and sufficient to determine whether a plaintiff is disabled, further development of the record is unnecessary, and the ALJ may make his or her determination based upon that evidence."  Dufresne I, 2013 WL 1296376, at *5 (citing 20 C.F.R. § 416.920b(a)).  Absent "obvious gaps" in the record, the ALJ is not required to supplement the record.  Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004) ("Butts I").  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  Rosa, 168 F.3d at 82–83 (quoting Pratts, 94 F.3d at 39).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  See Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts I, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

**B.  Benefit Eligibility**

For purposes of SSI benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 1382c(3)(B).  In reviewing a claim of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 416.920(a)(4)(i)–(v).  The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof; the burden shifts to the Commissioner at step five.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy.  See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005) ("Butts II"); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).

### C. Medical Opinion Evidence

For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to those physicians with the most significant relationship with the claimant.  See 20 C.F.R. § 416.927; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004).  Under this "[T]reating [P]hysician [R]ule," (the "Rule"), an ALJ was required to "give good reasons" Kevin E. v. Comm'r of Soc. Sec., No. 19 Civ. 593 (EAW), 2021 WL 1100362, at *3–4 (W.D.N.Y. Mar. 23, 2021) (internal citation omitted), if he or she determined that a treating physician's opinion was not entitled to "controlling weight," or, at least, "greater weight" than the opinions of non-treating and non-examining sources.  Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89 (S.D.N.Y. 2000).  In addition, under the Rule, a consultative physician's opinion was generally entitled to "little weight."  Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence, revisions that were applicable to applications filed on or after March 27, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence,

82 F. R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  These new regulations reflect a departure from a perceived hierarchy of medical sources.  <u>See</u> <u>id.</u>  The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[4]  20 C.F.R. § 416.920c(a).  <u>See</u> <u>Young v. Kijakazi</u>, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021).  Instead, an ALJ must consider all medical opinions in the record and "evaluate the[ir] persuasiveness" based on five "factors":  (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any "other" factor that "tend[s] to support or contradict a medical opinion."  20 C.F.R. § 416.920c(a)–(c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 416.920c(a)–(b).  Under the new regulations, the ALJ must "explain," in all cases, "how [he or she] considered" both the supportability and consistency factors, as they are "the most important factors."  <u>Id.</u> § 416.920c(b)(2); <u>see</u> <u>Young</u>, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors); <u>Amber H. v. Saul</u>, No. 20 Civ. 490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for

---

[4] The new regulations define "prior administrative medical finding" as:

> [A] finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (<u>see</u> § 416.1400) in your current claim based on their review of the evidence in your case record, such as: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are a child, statements about whether your impairment(s) functionally equals the listings in Part 404, Subpart P, Appendix 1; (v) If you are an adult, your [RFC]; (vi) Whether your impairment(s) meets the duration requirement; and (vii) How failure to follow prescribed treatment (<u>see</u> § 416.930) and drug addiction and alcoholism (<u>see</u> § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(5).

determining the persuasiveness of medical opinions are consistency and supportability," the "same factors" on which the Rule was based); <u>Rivera v. Comm'r of the Soc. Sec. Admin.</u>, No. 19 Civ. 4630 (LJL) (BCM), 2020 WL 8167136, at *13 (S.D.N.Y. Dec. 30, 2020) ("<u>S. Rivera</u>") (explaining that supportability and consistency are the "most important" factors under 20 C.F.R. § 416.920c(c)).  As to supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." <u>Vellone v. Saul</u>, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("<u>Vellone I</u>") (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)), <u>adopted by</u>, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("<u>Vellone II</u>"); <u>see</u> <u>S. Rivera</u>, 2020 WL 8167136, at *16 (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 416.920c(c)(1)).  Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  <u>Vellone I</u>, 2021 WL 319354, at *6.

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source.  20 C.F.R. § 416.920c(b)(2).  If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors.  <u>See</u> <u>id.</u> § 416.920c(b)(3).

Thus, "[a]lthough the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medication opinion,

the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'"  Andrew G. v. Comm'r of Soc. Sec., No. 19 Civ. 942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. §§ 416.920c(a), (b)(1)).  "The ALJ need not discuss all of the factors described in the regulations, but must, as to each opinion or prior administrative medical finding, 'explain how [he or she] considered the supportability and consistency factors."  S. Rivera, 2020 WL 8167136, at *14 (quoting 20 C.F.R. § 416.920c(b)(2)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases her explanation upon a misreading of the record, remand is required."  S. Rivera, 2020 WL 8167136, at *14 (quoting Andrew G., 2020 WL 5848776, at *9)).

District courts in this Circuit have "upheld the validity of the Commissioner's elimination of the [Rule] and implementation of the new regulations."  Tasha W. v. Comm'r of Soc. Sec., No. 20 Civ. 731 (TWD), 2021 WL 2952867, at *6 (N.D.N.Y. July 14, 2021) (collecting cases).  Nevertheless, "the new [r]egulations do not amount to much of a change in terms of the analysis itself."  Amanda R. v. Comm'r of Soc. Sec., 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021).  As several District Courts within the Second Circuit applying the new regulations have concluded, "the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar" to the Rule.  Acosto Cuevas v. Comm'r of Soc. Sec., No. 20 Civ. 502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (surveying district court cases in the Second Circuit considering the new regulations); see Prieto v. Comm'r of Soc. Sec., No. 20 Civ. 3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) (noting that under both the Rule and the new regulations, "an ALJ's failure to properly consider and apply the requisite factors is grounds for remand"); Dany Z. v. Saul, No. 19 Civ. 217 (WKS), 2021 WL 1232641, at *12 (D. Vt.

Mar. 31, 2021) (surveying Second Circuit district courts that "have concluded that the factors are very similar to the analysis under the old [R]ule"); Andrew G., 2020 WL 5848776, at *5 (noting that "consistency and supportability" were "the foundation of the treating source rule"); see also Brianne S. v. Comm'r of Soc. Sec., No. 19 Civ. 1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding to ALJ with instructions to provide explicit discussion of supportability and consistency of two medical opinions, because ALJ's "mere[] state[ment]" that examining physician's opinion was not consistent with overall medical evidence was insufficient).

### D.  The Claimant's Credibility

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms[.]"  20 C.F.R. § 416.929(c); see SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).  If such an impairment is found, the ALJ must next evaluate the "intensity and persistence of [the] symptoms [to] determine how [the] symptoms limit [the claimant's] capacity for work."  20 C.F.R. § 416.929(c)(1).  To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts."  Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010).  "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)."  Id.

"Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 416.929(c)(3)]." Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)). If the ALJ does not follow these steps, remand is appropriate. See Sanchez, 2010 WL 101501, at *14–15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects. SSR 96-7p, 1996 WL 374186, at *2 (superseded by SSR 16-3p for cases filed after March 27, 2017). These seven factors include:  (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See Bush, 94 F.3d at 46 n.4; 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *4–9.

### IV.     DISCUSSION

Mr. Cuspert advances four arguments in support of his request for reversal of the ALJ Decision:  (1) the Record, specifically, the psychological consultants and the evidence of Mr. Cuspert's limitation, supports a finding of disability; (2) the ALJ failed to consider properly the opinion of Mr. Cuspert's treating therapist, Hali Riley, LMSW ("Ms. Riley"), and the SSA's

psychiatric consultative examiner, Alan Dubro, M.D. ("Dr. Dubro"); (3) the ALJ failed to consider properly the "paragraph B" criteria of Listings 12.04 and 12.08; and (4) the VE's testimony did not constitute substantial evidence because the ALJ failed to include in the First Hypothetical Mr. Cuspert's inability to perform math and failed to order an intelligence evaluation as Dr. Dubro recommended.  (ECF No. 29 at 13–25).  The Commissioner responds that the ALJ properly assessed Mr. Cuspert's credibility, weighed the medical opinions, determined that he did not meet Listings 12.04 and 12.08, and relied on the VE's testimony without ordering further intelligence testimony, such that substantial evidence supports the ALJ Decision finding Mr. Cuspert not disabled.  (ECF No. 33 at 17–30).

Because the Court determines that the ALJ erred in failing to develop the record by obtaining the recommended intelligence evaluation, the Court cannot find that substantial evidence supports the ALJ Decision, and orders remand on that basis.[5]

### A.   The ALJ Failed To Develop The Record As To Mr. Cuspert's Intellectual Functions

As a threshold matter, the Court finds that the ALJ failed to develop the Record with respect to Mr. Cuspert's intellectual functioning, and therefore, remand is required.  See Rosa, 168 F.3d at 79 (explaining that whether the ALJ has satisfied the duty to develop the record is a threshold question); Manzella v. Comm'r of Soc. Sec., No. 20 Civ. 3765 (VEC) (SLC), 2021 WL 5493186, at *1–2 (S.D.N.Y. Nov. 22, 2021) (remanding where ALJ failed to develop record

---

[5] Because remand is necessary for development of the Record, the Court does not reach Mr. Cuspert's alternative arguments.  See Gray v. Kijakazi, No. 20 Civ. 4636 (SLC), 2022 WL 974385, at *15 (S.D.N.Y. Mar. 31, 2022) (due to remand for failure to develop the record, declining to address claimant's other arguments); Prieto, 2021 WL 3475625, at *16 (same).

adequately); Dufresne I, 2013 WL 1296376, at *7–8 (remanding where ALJ failed to develop record by, inter alia, obtaining an intelligence evaluation).

The SSA regulations give an ALJ discretion to order a consultative intelligence evaluation to develop the record, if the ALJ finds that the medical sources in the record do not supply the information needed to form a conclusion about a claimant's intellectual functioning. See 20 C.F.R. § 416.919a. "A consultative examination is unnecessary if the record contains sufficient information on which to base the decision." Hall ex rel. M.M. v. Astrue, No. 11 Civ. 6317 (MAT), 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

Here, the Court finds that the Record contains conflicting evidence as to Mr. Cuspert's intellectual functioning that warrants further development of the Record. On January 3, 2019, SSA consulting examiner Dr. Dubro conducted a psychiatric evaluation of Mr. Cuspert. (R. 280–84). Mr. Cuspert reported to Dr. Dubro that, while in prison, he received treatment, including hospitalization, for psychiatric disorders, and in 2001, attempted suicide. (R. 280). Since leaving prison, Mr. Cuspert had been receiving psychotherapy and psychiatric treatment, and was taking Zoloft (200mg)[6] and Trazodone (100mg).[7] (R. 280). Mr. Cuspert described feeling depressed due to having "spent most of his adult life in prison" and not having "the skills to maintain any gainful employment during his adult life." (R. 280–81).

---

[6] Zoloft, a selective serotonin reuptake inhibitor ("SSRI"), is used to treat depression, panic attacks, obsessive compulsive disorder, post-traumatic stress disorder, social anxiety disorder, and a severe form of premenstrual syndrome. See Zoloft – Uses, Side Effects, and More, WEBMD, https://www.webmd.com/drugs/2/drug-35/zoloft-oral/details (last visited Sept. 19, 2022); Zoloft, DRUGS.COM, https://www.drugs.com/zoloft.html (last visited Sept. 19, 2022).

[7] Trazodone, a serotonin receptor antagonists and reuptake inhibitors ("SARI"), is used to treat major depressive disorders, insomnia, schizophrenia, and anxiety. See Trazodone, DRUGS.COM, https://www.drugs.com/trazodone.html (last visited Sept. 19, 2022); Trazodone, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a681038.html#:~:text=Trazodone%20is%20used%20to%20treat,that%20helps%20maintain%20mental%20balance. (last visited Sept. 19, 2022).

Dr. Dubro also conducted a mental status examination ("MSE"), during which he found that Mr. Cuspert could not perform serial 7s, made errors in performing serial 3s, was unable to perform simple mental multiplication or division, had impaired recent and remote memory skills, was "[e]stimated to fall in the intellectually disabled range[,]" and had a "limited" "general fund of information[.]"  (R. 282).  Dr. Dubro opined that Mr. Cuspert had moderate limitations in his ability to understand, remember, and apply simple directions and instructions, and his ability to maintain personal hygiene.  (R. 282–83).  Dr. Dubro opined that he had marked limitations in his abilities to:  understand, remember, and apply complex interact adequately with supervisors, co-workers, and the public; sustain concentration and perform tasks at a consistent pace; sustain an ordinary routine and regular attendance at work; and regulate emotions and maintain his well-being.  (R. 283).  Dr. Dubro found that Mr. Cuspert's psychiatric and cognitive problems "significantly interfere[d] with [his] ability to function on a daily basis."  (R. 283).  Dr. Dubro recommended that an intelligence evaluation occur, "given [Mr. Cuspert's] history of significant learning problems."  (R. 283).

Ms. Riley, Mr. Cuspert's treating social worker at FedCap,[8] noted in a medical source statement dated June 3, 2019, that he had marked limitation in his abilities to maintain regular attendance and being punctual, working in coordination with or proximity to others without being unduly distracted, and extreme limitations in dealing with stress or semi-skilled and skilled

---

[8] FedCap is a non-profit organization founded in 1935 whose mission is "[t]o create opportunities for people with barriers to economic well-being."  See History, FEDCAP, https://www.fedcap.org/about-us/#our-history (last visited Sept. 19, 2022).  It offers educational and vocational rehabilitation programs, and facilitates employment placement in facilities management positions.  See Career Design School, FEDCAP, https://www.fedcap.org/educational-services/ (last visited Sept. 19, 2022); see also White v. Comm'r of Soc. Sec., No. 20 Civ. 6222 (SLC), 2022 WL 951049, at *9 n.3 (S.D.N.Y. Mar. 30, 2022) (describing FedCap).

work, and completing a normal workday or week without interruptions from psychologically-based symptoms.  (R. 420–22; see R. 278).  Overall, she found that he had a marked limitation in maintaining social functioning.  (R. 278, 421–22).

At the Hearing, Mr. Cuspert testified he attended school for only nine years, in special education classes, and never obtained a GED.  (R. 10, 181; see R. 45 (ALJ noting that Mr. Cuspert did not graduate from high school or obtain his GED); 317 (noting ninth was highest grade completed)).  Although he worked as a porter in prison, since 2018, he had worked in one location for just one day, and in another location for "about a week."  (R. 10–11).  In a Disability Report on Form SSA-3368 dated November 11, 2018, interviewer V. Casucci noted that Mr. Cuspert had only a ninth-grade education, and while noting that he had no difficulty, inter alia, understanding, talking, and concentrating, omitted any assessment of his ability to read or write.  (R. 187–88).  A Disability Report by interviewer C. Jennings dated April 9, 2019 contained similar notations, and omitted any assessment of his ability to read or write.  (R. 224–25).  The Record contains no indication of Mr. Cuspert's intelligence quotient ("IQ"), school records, or other intelligence assessment.

On the other hand, Mr. Cuspert was able to testify coherently at the Hearing, completed by himself two Function Reports in legible handwriting,[9] and went on three interviews for employment in custodial positions.  (R. 2–22, 195–202, 203–210, 336).  Ms. Riley opined that his deficiencies in concentrating or maintaining consistent pace as would prevent him from completing tasks in a timely manner would occur on a "seldom" basis.  (R. 422).

---

[9] A partial Function Report, containing questions about headaches, appears to have been completed by Ms. Riley and signed by Mr. Cuspert.  (R. 213–14).

In the Decision, the ALJ found "unpersuasive" Dr. Dubro's opinion that Mr. Cuspert had marked limitations in certain areas, but made no mention of Dr. Dubro's recommendation for an intelligence evaluation.  (R. 46).  The Court agrees with Mr. Cuspert that the ALJ should have further developed the Record by obtaining an intelligence evaluation, particularly given Dr. Dubro's estimation that Mr. Cuspert fell in an "intellectually disabled range" and had only a "limited" "general fund of information."  (R. 282).  As noted above, other evidence in the Record is, at a minimum, ambiguous as to Mr. Cuspert's reading, writing, and calculation abilities.  The Court accordingly disagrees with the Commissioner's assertion that "the record was more than adequate to allow the ALJ to determine whether" Mr. Cuspert's mental impairments prevented him from performing even unskilled work as the ALJ determined in the RFC.  (ECF No. 33 at 29).

Given the evidence of "cognitive impairment, with conflicting evidence as to his abilities, the ALJ should have ordered a consultative intelligence evaluation to clarify [his] intelligence level and properly render a decision on whether [his] mental impairment is severe."  Dufresne I, 2013 WL 1296376, at *8 (remanding for intelligence evaluation of claimant who had only a ninth-grade special education and as to whom consultative examiner found "cognitive delays" and inability to do simple math calculations); see Faison v. Berryhill, No. 16 Civ. 6055 (MAT), 2017 WL 3381055, at *5 (W.D.N.Y. Aug. 5, 2017) (remanding with instructions to perform consultative and/or intelligence testing in light of consultative examiner's diagnosis of probable borderline intellectual functioning); Laveck v. Astrue, No. 10 Civ. 1355 (RFT), 2012 WL 4491110, at *6 (N.D.N.Y. Sept. 28, 2012) (finding that "the ALJ should have ordered a consultative intelligence exam" where consulting examiners' opinions as to claimant's cognitive abilities and remanding with instructions to "develop the record more fully with regard to Plaintiff's alleged learning

disorder"); see also Wilson v. Comm'r of Soc. Sec., No. 17 CV 6695 (JWF), 2019 WL 1230015, at

*3 (W.D.N.Y. Mar. 15, 2019) (finding that "ALJ should have further developed the record" as to

claimant's intelligence scores and school records); Wallace v. Colvin, 120 F. Supp. 3d 300, 305

(W.D.N.Y. 2015) (remanding for intellectual testing where the record did not contain objective

testing, plaintiff had significant educational difficulties, never held employment, and was unable

to drive or manage finances).  Accordingly, remand to permit further development of the Record,

including an intelligence evaluation, is necessary for a proper evaluation of Mr. Cuspert's mental

limitations on his ability to work, if any.

> **B. On Remand, The ALJ Should Consider Whether Mr. Cuspert's Mental Impairments Satisfy Listing 12.05**

In the ALJ Decision, the ALJ considered whether Mr. Cuspert's mental impairments

satisfied Listings 12.04 and 12.08, but did not consider Listing 12.05, which describes the standard

for intellectual disorders.  See 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.05.[10]  A claimant can

satisfy Listing 12.05 by meeting the criteria in either paragraph A or paragraph B.  Paragraph A of

Listing 12.05:

> requires a claimant to show: (1) significantly subaverage general intellectual functioning evident in a cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; (2) significant deficits in adaptive functioning manifested by a dependence upon others for personal needs; and (3) evidence supporting the conclusion that the intellectual disorder began before reaching 22 years of age.

---

[10] Effective January 17, 2017, the Social Security Administration amended the criteria in the Listings used to evaluate claims of intellectual disability and changed the name of Listing 12.05 to "intellectual disorders." See Soc. Sec. Admin., Revised Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138–01 (Sept. 26, 2016).

Kelly F. v. Saul, 496 F. Supp. 3d 733, 738–39 (N.D.N.Y. 2020) (citing Listing 12.05(A)).  Paragraph

B of Listing 12.05:

> requires a claimant to show: (1) significantly subaverage general intellectual functioning, evidenced by either a full-scale IQ score of 70 or below or a full-score IQ score of 71–75 combined with a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning manifested by either extreme limitation in one area of mental functioning or marked limitation in two areas of mental functioning; and (3) evidence supporting the conclusion that the intellectual disorder began before reaching 22 years of age.

Kelly F., 496 F. Supp. 3d at 739 (citing Listing 12.05(B)).

Subject to the results of the intelligence evaluation for which the Court is remanding Mr.

Cuspert's claim for SSI benefits, the Record at present contains some evidence for the potential

applicability of Listing 12.05.  Courts have noted that "[a]ttendance of special education classes

or poor reading abilities have been recognized as possible examples of deficits in adaptive

functioning."  Wilson, 2019 WL 1230015, at *4 (collecting cases); see Black v. Berryhill, No. 17

Civ. 557 (FFG), 2018 WL 4501063, at *5–6 (W.D.N.Y. Sept. 20, 2018) (remanding for

reconsideration of claimant's adaptive functioning where ALJ failed to consider that claimant

attended special education classes, dropped out of school before tenth grade, had difficulty with

reading, writing, and simple math, and never held an unskilled job for longer than a few months).

And, because Mr. Cuspert did not receive formal education beyond the ninth grade, he would

thus appear to satisfy the third requirement of both paragraphs A and B.

Accordingly, on remand, following receipt of the results of the intelligence evaluation, the

ALJ should consider, in addition to Listings 12.04 and 12.08, whether Mr. Cuspert's mental

impairments satisfy the requirements of Listing 12.05.  See Wilson, 2019 WL 1230015, at *3

(collecting cases finding that claimants who "attended special education classes; dropped out of

school before graduation; or had difficulties in reading, writing, or math" presented circumstantial evidence of deficits in adaptive functioning before age 22); <u>Perkins v. Berryhilll</u>, No. 17 Civ. 200 (MPS), 2018 WL 3344227, at *4 (D. Conn. July 9, 2018) (remanding where there was "at least some evidence in the record that" the claimant met the criteria of Listing 12.05C, the predecessor to Listing 12.05).

*       *       *

Given the gap in the Record and resulting errors in the ALJ's application of the five-step evaluation identified above, the Court cannot conclude that "substantial evidence" supports the ALJ Decision, and therefore, remand is appropriate for further development of the Record. <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980).

## V.   **CONCLUSION**

For the reasons set forth above, Mr. Cuspert's Motion is GRANTED, the Commissioner's Motion is DENIED, and the ALJ Decision is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

The Clerk of the Court is respectfully directed to close ECF Nos. 28 and 32.

Dated:       New York, New York
             September 20, 2022

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**